IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| RAYMOND VUONCINO, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case No. 3:21-cv-01046-K |
| | § | |
| FORTERRA, INC. et al., | § | |
| | § | |
| Defendants. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Before the Court are Defendants Forterra, Inc. and United States Pipe Fabrication, LLC's (USPF's) Motion to Compel Arbitration and to Stay All Claims Pending Arbitration (ECF No. 142) and Defendants Jeffrey Bradley and William Kerfin's Joinder Motion to the Motion of the Other Defendants to Compel Arbitration and to Stay All Claims Pending Arbitration. For the reasons explained in these Findings, Conclusions, and Recommendation, the Court GRANTS the Joinder Motion (ECF No. 156) and recommends the District Court GRANT Defendants' Motion to Compel Arbitration. The Court further recommends the District Court STAY Plaintiff Raymond Vuoncino's state-law claims pending arbitration, but decline to stay Vuoncino's Sarbanes-Oxley whistleblower claim.

**Preliminary Matters**

Initially, the Court considers Bradley and Kerfin's request to join Forterra and USPF's Motion to Compel Arbitration. Bradley and Kerfin assert that, as

Forterra employees, they are specifically included as intended third-party beneficiaries of the alleged arbitration agreement at issue here. *Id.* ¶ 3 (citation omitted). Vuoncino does not substantively address Bradley and Kerfin's request, and apparently does not oppose the relief requested. Accordingly, the Court finds good cause to GRANT Bradley and Kerfin's unopposed Motion to join the Motion to Compel Arbitration.

## Background

Vuoncino is a self-described "operations and financial leader in various industries, including in Fortune 500 and private equity companies, and entrepreneurial and 'Big 4' consulting venues." Pl.'s Ex. B 25, ¶ 2 (ECF No. 167-2). He has managerial experience at Dow Jones & Company, Philip Morris Companies, and KPMG. *Id.* at 26, ¶¶ 4-6.

USPF is a wholly owned subsidiary of United States Pipe Holdings, Inc. (Holdings), which itself was wholly acquired by Forterra in April 2016. Pl.'s Ex. A 5-7 (ECF No. 167-2). According to Defendants, USPF is currently "the nation's largest independent ductile iron pipe fabricator focused on creating custom solutions for the wastewater and sewage treatment industry." *Id.* at 2. And Vuoncino asserts that Forterra, headquartered in Irving, Texas, is a "publicly traded company . . . [that] is a leading manufacturer of water and drainage infrastructure pipe and products in the United States and Eastern Canada." Am. Compl. ¶¶ 14, 34 (ECF No. 59).

Vuoncino claims that he began working for USPF as an "independent consultant" in March 2013, before he was ultimately hired to be USPF's general manager in August 2013. *Id.* at 27, ¶¶ 8-9. Defendants, however, allege that Vuoncino was hired by United States Pipe and Foundry Company, LLC (Foundry), USPF's sister company, and was then assigned to serve as general manager for USPF by Foundry. Def.'s Mot. to Compel Arb. 8 (ECF No. 142). Defendants further contend that, as a condition of employment, Vuoncino signed a form acknowledging that he "agreed to be bound" by Foundry's Dispute Resolution Program (DRP), which Defendants claim mandates binding arbitration for all employees of Foundry or its subsidiaries or affiliates. *Id.* For his part, Vuoncino claims that he has "no recollection of having received [an acknowledgment form], having read it . . . , or having signed it." Pl.'s Ex. B 29, ¶ 17.

Vuoncino remained an employee of USPF, and various other Forterra subsidiaries, during multiple changes in the conglomerate's organizational structure, including Forterra's purchase of Holdings and subsequent initial public offering. *See* Am. Compl. ¶¶ 6-71; Pl.'s Ex. A 2-12. Throughout his employment, Vuoncino's "main office" at USPF was in Orlando, Florida, although he also worked out of his home in New Jersey and frequently travelled across the country to attend meetings in various states. *See, e.g.*, *Id.* ¶¶ 7, 28, 46, 57, 94, 98. Vuoncino alleges that by November 2016 he was concerned about potentially unlawful accounting practices being used at various Forterra subsidiaries, including USPF. Am. Compl. ¶¶ 39-45. Vuoncino further claims that, as his concerns grew, he began reporting

them to various Forterra and Forterra-subsidiary executives. *Id.* ¶¶ 46-64. Specifically, Vuoncino asserts that he repeatedly brought his concerns to Kerfin, Forterra's President of Water Pipe & Products, and Bradley, Forterra's CEO. *Id.* ¶¶ 15, 64. In response to Vuoncino's concerns, Kerfin and Bradley allegedly "either would cut Vuoncino off . . . or become noticeably agitated." *Id.* ¶ 64.

Finally, Vuoncino contends that Kerfin terminated Vuoncino's employment in January 2017 because Kerfin believed Vuoncino "would not allow the [allegedly illicit] accounting practices to be 'swept under the rug.'" *Id.* ¶¶ 65-67. Defendants, however, claim that Vuoncino's termination was merely a result of "ongoing restructuring efforts." Pl.'s Ex. A 10.

Vuoncino then brought an administrative complaint against Defendants, alleging that he was terminated as a result of his protected activity and seeking reinstatement, compensatory damages, back pay, attorneys' fees, and costs. Am. Compl. ¶¶ 79-80. When the administrative complaint was not resolved within 180 days, Vuoncino filed this lawsuit in the United States District Court for the District of New Jersey. *Id.* ¶ 81. In his Amended Complaint, Vuoncino brings claims against Defendants for violation of the whistleblower provision of the Sarbanes-Oxley Act (SOX), violation of the Florida Private Sector Whistleblower Act, common-law wrongful discharge, and common-law breach of contract. *Id.* ¶¶ 92-110.

Defendants responded to Vuoncino's lawsuit by filing a Motion to Compel Arbitration (ECF No. 12) and a separate Motion to Dismiss for Lack of Personal Jurisdiction, Improper Venue, and Failure to State a Claim (ECF No. 11). With

4

respect to venue, Vuoncino alleged that venue in the District of New Jersey was proper because he lived and worked in New Jersey during his employment, but Defendants disputed that the location of Vuoncino's home office was sufficient to establish venue in New Jersey. *See generally*, Op. (ECF No. 126). Instead, Defendants argued that venue was proper in the Northern District of Texas because the decision to terminate Vuoncino occurred at Forterra's headquarters in Irving. *Id.* at 11. None of the parties argued that venue was proper in Florida. Three years later, the New Jersey Court agreed with Defendants and transferred the case to this Court. Order 1-2 (ECF No. 127).

After the case was transferred, Forterra and USPF filed a renewed Motion to Compel Arbitration, which Kerfin and Bradley then joined (ECF No. 156). In the pending motion, Defendants argue that the DRP acknowledgment form Vuoncino signed constitutes a mandatory arbitration agreement, and this Court must compel his state-law claims to mandatory arbitration and stay all his claims, including his SOX claim, pending that arbitration. Vuoncino filed a Response (ECF No. 167), wherein he argues that he is not subject to the DRP, the DRP is not enforceable, and his claims are outside the scope of the DRP, and that, in any case, none of his claims should be compelled to arbitration or stayed because of SOX's specific statutory ban of predispute arbitration agreements. Defendants then filed Replies (ECF Nos. 172 & 173), essentially reiterating arguments from the Motion to Compel Arbitration. Accordingly, the Motion to Compel Arbitration is fully briefed and ripe for consideration.

## Legal Standard

Defendants move to compel arbitration of all Vuoncino's claims—except for his SOX claim.[1] Historically, American courts adopted from the English common law "centuries of judicial hostility to arbitration agreements." *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 510 (1974). But Congress passed the Federal Arbitration Act (FAA) to reverse this hostility and "ensure judicial enforcement of privately made agreements to arbitrate." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 219 (1985). Section 2 of the FAA provides that "[a] written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity or the revocation of any contract." 9 U.S.C. § 2; *see also Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 67 (2010). "The FAA thereby places arbitration agreements on an equal footing with other contracts . . . and requires courts to enforce them according to their terms." *Rent-A-Cente*r, 561 U.S. at 67.

Parties aggrieved by another party's failure to arbitrate a claim pursuant to a written arbitration agreement may petition a federal court "for an order directing that such arbitration proceed in a manner provided for in such agreement." *Id.* (quoting 9 U.S.C. § 4). "Once the court is satisfied that the making of the agreement

---

[1] Defendants concede that arbitration of Vuoncino's SOX claim is "prohibited by statute." Defs.' Mot. to Compel Arb. 7n.2.

for arbitration or the failure to comply therewith is not in issue, it shall order arbitration." *Gezu v. Charter Commc'ns*, 2021 WL 419741, at *4 (N.D. Tex. Jan. 7, 2021) (Rutherford, J.) (internal quotation marks omitted) (quoting *Floyd v. Kelly Servs., Inc.*, 2019 WL 4452309, at *2 (N.D. Tex. Aug. 30, 2019) (Rutherford, J.) (citing *Rent-A-Center*, 561 U.S. at 67 (citing 9 U.S.C. § 4))).

"Courts perform a two-step inquiry when considering whether to compel arbitration." *Will-Drill Res., Inc. v. Samson Res. Co.*, 352 F.3d 211, 214 (5th Cir. 2003). First, the court determines "whether the parties agreed to arbitrate the dispute," *Floyd*, 2019 WL 4452309 at *2, as "[a]rbitration is strictly a matter of consent." *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 299 (2010). This inquiry involves answering two questions: "(1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in questions falls within the scope of the arbitration agreement."[2] *Am. Heritage Life*

---

[2] In determining whether a valid arbitration agreement exists, "[c]ourts apply ordinary state-law principles that govern the formation of contracts." *Maravilla v. Gruma Corp.*, 783 Fed. App'x 392, 394 (5th Cir. 2019) (quoting *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 942 (1995)) (internal quotation marks omitted). "Texas courts apply the 'most significant relationship test' to determine which state's law to apply in a breach of contract case." *Krohn v. Spectrum Gulf Coast, LLC*, 2019 WL 4572833, at *3 (N.D. Tex. Sept. 19, 2019) (citing *DTEX, LLC v. BBVA Bancomer, S.A.*, 508 F.3d 785, 802 (5th Cir. 2007); *Torrington Co. v. Stutzman*, 46 S.W.3d 829, 848 (Tex. 2000)). Relevant factors to consider under this test include "the place where the injury occurred, the place where the injury causing conduct occurred, the parties' residence, and the place where the relationship, if any, between the parties is centered." *Vasquez v. Bridgestone/Firestone, Inc.*, 325 F.3d 665, 674 (5th Cir. 2003). In this case, Plaintiff and Defendants dispute whether Texas, New Jersey, or Florida law applies. But both sides agree that the choice-of-law analysis is not outcome

*Ins. Co. v. Lang*, 321 F.3d 533, 537 (5th Cir. 2003). The strong federal policy favoring arbitration does not apply "to the determination of whether there is a valid agreement to arbitrate between the parties." *Id.* Second, the court must determine "whether any federal statute or policy renders the claims nonarbitrable." *Floyd*, 2019 WL 4452309 at *2 (internal quotation marks omitted) (quoting *R.M. Perez & Assocs., Inc. v. Welch*, 960 F.2d 534, 538 (5th Cir. 1992)).

**Analysis**

I.    <u>Existence of an Arbitration Agreement</u>

As an initial matter, the Court must determine whether Vuoncino's claims are subject to an arbitration agreement using the analysis outlined above. Vuoncino asserts that the Defendants cannot demonstrate there was a binding agreement to arbitrate here because "there was no clear mutual assent," because it is highly doubtful that the alleged agreement "covered . . . employees such as Vuoncino," and because Defendants cannot solve "factual issues on . . . gateway issues." Pl.'s Resp. 20. Defendants, however, argue that, because the DRP contained a clause reserving the issue of arbitrability for the arbitrator, the Court's sole inquiry here is whether the parties entered into any arbitration agreement at all. Defs.' Mot. to Compel Arb. 21-22. Moreover, Defendants claim that the existence of the DRP, along with the acknowledgment form signed by Vuoncino,

_____

determinative, and the result would be the same regardless of which state-law governs. *See* Def.'s Mot. to Compel Arb. 12n.5; Pl.'s Resp. 5. Accordingly, the Court pretermits its choice-of-law analysis.

should end this inquiry. *Id.* at 22. Vuoncino, meanwhile, has "no recollection of having . . . signed [the DRP acknowledgment form]." Pl.'s Ex. B ¶ 17 (ECF No. 167-2).

As noted above, "[a]lthough there is a strong federal policy favoring arbitration, [that policy] does not apply to the determination of whether there is a valid agreement to arbitrate between the parties." *Moran v. Ceiling Fans Direct, Inc.*, 239 F. App'x 931, 936 (5th Cir. 2007) (per curiam) (internal quotation marks and citation omitted). However, when an arbitration agreement contains a delegation clause "giving the arbitrator the primary power to rule on the arbitrability of a specific claim, the analysis changes." *Kubala v. Supreme Prod. Servs., Inc.*, 830 F.3d 199, 201 (5th Cir. 2016) (citing *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 942 (1995)). If the party seeking arbitration points to a purported delegation clause, then the court analyzes whether an agreement exists; if it finds an agreement exists, "the only question . . . is whether the purported delegation clause is in fact a delegation clause—that is, if it evinces an intent to have the arbitrator decide whether a given claim must be arbitrated." *Id.* at 202 (citing *Rent-A-Center*, 561 U.S. at 68-69). "If there is a delegation clause, the motion to compel arbitration should be granted in almost all cases." *Id.* A court's only line of inquiry in such cases is "the very existence of a contract containing the relevant arbitration agreement." *Banc One Acceptance Corp. v. Hill*, 367 F.3d 426, 429 (5th Cir. 2004) (internal quotation marks and citation omitted); *see also Clark*

*v. Nordstrom, Inc.*, 2019 WL 3428947, at *3 (N.D. Tex. July 30, 2019) (Fitzwater, J.).

Here, an arbitration agreement existed between Vuoncino and Defendants. Defendants have provided a copy of the DRP acknowledgment form ostensibly signed by Vuoncino. Defs.' Ex. 1, at 6 (ECF No. 142-1). This acknowledgment specifically references the larger DRP policy and requires an express acknowledgment that the signatory is "bound by the [DRP]," thereby requiring him to arbitrate the "many . . . claims specifically defined in the [DRP]." *Id.* Defendants also provide a sworn affidavit from their head of human resources, claiming that Vuoncino executed the acknowledgment form on August 18, 2013. Defs.' Ex. A, at 3 ¶ 4 (ECF No. 142-1).

Vuoncino makes a number of arguments regarding the DRP's enforceability or scope,[3] two of which he couches as arguments against the existence of an arbitration agreement. First, Vuoncino claims that there is no arbitration agreement here because the DRP acknowledgment form applies only to employees of Foundry, and Vuoncino was employed by USPF when he allegedly signed the

––––––––––––––––––––

[3] Such arguments include: that the DRP is unenforceable under New Jersey, Florida, or Texas law; that the DRP's waiver language is impermissibly unclear; that Vuoncino did not understand that the DRP was a binding arbitration agreement; or that the DRP is enforceable by only some of the Defendants. *See generally* Pl.'s Resp. 8-19. *See also Arnold v. Homeaway, Inc.*, 890 F.3d 546, 554 (5th Cir. 2018) (holding that, because the plaintiff did "not specifically challenge the validity of the delegation clause, [the court did not need to] reach the remainder of the issues briefed by the parties.").

form. Pl.'s Resp. 8-9. But this argument only goes toward enforceability—questioning whether the agreement is enforceable against an employee of USPF—not the existence of an arbitration agreement at all. *See Arnold v. Homeaway, Inc.*, 890 F.3d 546, 550 (5th Cir. 2018) ("[T]he Supreme Court has suggested that the category of arguments that question the very existence of an agreement include 'whether the alleged obligor ever signed the contract, whether the signor lacked authority to commit the alleged principal, and whether the signor lacked mental capacity to assent.'" (quoting *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 444n.1 (2006))).

Second, Vuoncino claims that no arbitration agreement exists here because the DRP acknowledgment form did not require Vuoncino to agree to anything, and by signing it "he simply confirmed that there was such a clause but did not agree that he was bound by it." Pl.'s Resp. 10. But this argument ignores that the DRP acknowledgment form explicitly states that the signatory understands that by continuing employment, the signatory is "bound by the [DRP]." Defs.' Ex. 1, at 6. Such an acknowledgment form, referencing a larger arbitration agreement, has routinely been found enforceable. *See, e.g., Jones v. Sallie Mae, Inc.*, 2013 WL 6283483, at *5 (M.D. Fla. Dec. 4, 2013) (collecting cases). Additionally, Vuoncino continued to work for Defendants after he signed the acknowledgment form, and continuing to work after acknowledging that an employer has instituted an arbitration program has been held to constitute acceptance. *Armstrong v. Assocs. Int'l Holding Corp.*, 2006 WL 2707431, at *2 (N.D. Tex. Sept. 20, 2006) ("Plaintiff

11

agreed to arbitrate all employment related disputes by signing the EAP memorandum receipts and continuing his employment with AIHC.") (Kinkeade, J.), *aff'd*, 242 F. App'x 955 (5th Cir. 2007).

Having dispensed with the above arguments, Vuoncino's only remaining substantive argument against the *existence* of any agreement here amounts to a single, self-serving statement that he has "no recollection of having . . . signed [the DRP acknowledgment form]." Pl.'s Ex. B ¶ 17. But such an assertion is ultimately irrelevant, as Vuoncino stops short of actually disputing that he signed the acknowledgment form. *See Cooks v. Soto*, 2015 WL 9583806, at *2 (N.D. Tex. Dec. 30, 2015) (Boyle, J.). And Vuoncino fails to answer the sworn affidavit provided by Defendants' head of human resources or the fact that Vuoncino's name is largely legible in the signature on the DRP acknowledgment form provided by Defendants. *See* Defs.' Ex. A, at 3; Defs.' Ex. 1, at 6.

Because an arbitration agreement exists between the parties, the only question that remains for this Court is whether the DRP contains a provision reserving issues of arbitrability for the arbitrator. The DRP explicitly contains an agreement to "arbitrate any issue regarding the enforceability of [the DRP], including the enforcement of the mandatory, binding Arbitration procedure." Defs.' Ex. 2, at 4; *see also id.* at 17 ("The arbitrator's power is limited to issues of arbitrability and to Covered Claims as defined in the [DRP]."). Vuoncino does not dispute that the DRP reserves issues of arbitrability for the arbitrator. Accordingly,

the Court finds that the DRP expressly reserved issues of arbitrability for the arbitrator.

Having determined that an arbitration agreement exists between the parties, and that the agreement contains a provision reserving issues of arbitrability for the arbitrator, the Court must compel the parties to proceed to arbitration unless a "federal statute or policy renders the claims nonarbitrable." *Floyd*, 2019 WL 4452309 at *2 (internal quotation marks and citation omitted). Here, the parties agree that Vuoncino's SOX whistleblower claim is nonarbitrable. Indeed, Congress has exempted all SOX whistleblower claims from "predispute arbitration agreement[s]." *See* 18 U.S.C. § 1514A(e)(2). The same is not true for Vuoncino's state-law claims, which are subject to arbitration.

Accordingly, the arbitrator will decide all of Vuoncino's state-law claims, and any issues of arbitrability—including whether Vuoncino's claims fall within the scope of the DRP, whether the DRP is legally enforceable, and whether the DRP is enforceable by all of the Defendants.

II.    Stay Pending Arbitration

The Court next considers whether to stay Vuoncino's claims pending the resolution of the parties' mandatory arbitration.

A.    *Supreme Court precedent and the text of the FAA make it clear that Vuoncino's arbitrable claims must be stayed.*

Having determined that Vuoncino's arbitrable claims must be sent to arbitration, the Court must now decide whether to stay litigation of the state-law

13

claims pending resolution of the parties' arbitration. Vuoncino, pointing to a single nonbinding case,[4] argues that his arbitrable claims should not be stayed because doing so "would require both sides to re-litigate the application of SOX's whistleblower provision . . . [and], such a result would not only frustrate the purpose of 18 U.S.C. § 1514A(e)(2) but would also place substantial financial burden and temporal burden on all parties involved." Pl.'s Resp. 27 (internal quotation marks and citation omitted). Defendants, meanwhile, contend that Supreme Court precedent and the text of Section 3 of the FAA mandate the stay of any claims subject to an arbitration agreement. Defs.' Reply 11 (ECF No. 172) (citation omitted).

"[W]hen a complaint contains both arbitrable and nonarbitrable claims, the [FAA] requires courts to compel arbitration of pendent arbitrable claims when one of the parties files a motion to compel, even where the result would be the possibly inefficient maintenance of separate proceedings in different forums." *KPMG, LLP v. Cocchi*, 565 U.S. 18, 22 (2011) (internal quotation marks and citation omitted). Section 3 of the FAA states that, "when any issue referable to arbitration under an agreement in writing" is presented to a court, the court "shall on application of one

---

[4] *Stewart v. Doral Financial Corp.*, 997 F. Supp.2d 129, 139-40 (D.P.R. 2014) (refusing to compel arbitration of a plaintiff's arbitrable state-law claims because doing so would "frustrate the purpose" of his nonarbitrable, Congressionally protected, SOX claim); *but see Wiggins v. ING U.S., Inc.*, 2015 WL 3771646, at *7 (D. Conn. June 17, 2015) (declining to follow *Stewart*), *on reconsideration*, 2015 WL 8779559 (D. Conn. Dec. 15, 2015), *abrogated on other grounds*, *Daly v. Citigroup Inc.*, 939 F.3d 415 (2d Cir. 2019).

of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3. The one nonbinding authority that Vuoncino cites is not enough to overcome express Supreme Court precedent and the plain language of the FAA. Accordingly, in this case, Vuoncino's arbitrable claims must be stayed while the parties undertake mandatory arbitration.

> B. *SOX's express disapproval of predispute arbitration agreements counsels against the Court's use of a discretionary stay on Vuoncino's SOX claim.*

The remaining question, then, is whether the Court should also stay Vuoncino's nonarbitrable SOX claim pending arbitration. Defendants argue that Fifth Circuit precedent allows the Court to grant a discretionary stay of Vuoncino's SOX claim while his other claims are in arbitration. Defs.' Mot. to Compel Arb. 23. Specifically, Defendants assert that "[i]t would be unnecessarily duplicative and inefficient to litigate this dispute in both" arbitration and litigation at the same time. *Id.* Vuoncino, meanwhile, argues that Defendants have failed to meet the "high burden" required for granting a discretionary stay, and cites authority from outside the Fifth Circuit asserting that SOX claims carry special considerations that counsel against granting a discretionary stay. Pl.'s Resp. 23-26 (citations omitted).

This case appears to present an issue of first impression in the Fifth Circuit. Neither the Court nor the parties have been able to identify a court in this circuit that has considered whether to stay a plaintiff's SOX claim while the rest of his claims were arbitrated. However, courts in this circuit have considered a somewhat

analogous issue—whether to stay a plaintiff's claims against a nonsignatory of an arbitration agreement while the plaintiff proceeds to mandatory arbitration for "inherently inseparable" claims against a signatory of an arbitration agreement.

In the most straightforward of such cases, the plaintiff brings claims against multiple defendants, some of which have signed an arbitration agreement with plaintiff, and some of which have not. In such situations, the Fifth Circuit "has held that a court must stay litigation of claims asserted against nonsignatories to an arbitration agreement where proceeding with litigation will destroy the signatories' right to a meaningful arbitration." *Jones v. Halliburton Co.*, 625 F. Supp. 2d 339, 355 (S.D. Tex. 2008), *aff'd and remanded*, 583 F.3d 228 (5th Cir. 2009) (internal quotation marks omitted) (citing *Waste Management, Inc. v. Residuos Industriales Multiquim, S.A. de C.V.*, 372 F.3d 339, 343 (5th Cir.2004)). However, Defendants do not argue that staying Vuoncino's SOX claim is mandatory. Instead, they point to the Fifth Circuit's articulation of the test for a discretionary stay in nonsignatory arbitration cases, arguing that the Court should apply that test here.

When a stay of nonarbitrating claims is not mandatory, the Fifth Circuit has held that such a stay is "subject to the district court's discretion and . . . only warranted if: (1) the arbitrated and litigated disputes involve[] the same operative facts; (2) the claims asserted in the arbitration and litigation [a]re inherently inseparable; and (3) the litigation [would have] a critical impact on the arbitration." *Rainier DSC 1, L.L.C. v. Rainier Capital Mgmt., L.P.*, 828 F.3d 356,

16

360 (5th Cir. 2016) (internal quotation marks omitted) (quoting *Waste Mgmt.*, 372 F.3d at 343; *see also Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 21 (1983) ("In some cases, of course, it may be advisable to stay litigation among the non-arbitrating parties pending the outcome of the arbitration. That decision is one left to the district court . . . as a matter of its discretion to control its docket."). While these factors are "neither required nor exclusive," the Fifth Circuit has made it clear that, in such cases, the relevant question is "whether proceeding with litigation will destroy the [arbitrating parties'] right to a meaningful arbitration." *Waste Mgmt.*, 372 F.3d at 343.

Additionally, at least two district courts in this circuit have applied this test to cases where, as here, all defendants had an arbitration agreement with the plaintiff, but some of the plaintiffs' claims were nonarbitrable for procedural or policy reasons. *See Kindred Hosps. Ltd. P'ship v. Cigna Health & Life Ins. Co.*, 2018 WL 10561987, at *1 (N.D. Tex. May 8, 2018) (citing *Waste Mgmt.* 372 F.3d at 343, and staying a claim that was "inherently inseparable from the claims the court . . . determined to be arbitrable"); *Jones*, 625 F. Supp. 2d at 356 ("In this case, the claims to be arbitrated and those to be litigated involve many of the same operative facts, and allowing the litigation of the nonarbitrable claims to proceed could have a significant impact on the arbitration. The Court therefore reluctantly concludes that it should stay litigation of Plaintiff's nonarbitrable claims during the pendency of the parties' arbitration.").

But this test, if applied to the facts of this case, does not necessarily indicate staying Vuoncino's SOX claim is appropriate. Vuoncino admits that his SOX claim arises "out of the same nucleus of operative facts" as his Florida Whistleblower Act claim and his common-law wrongful-discharge claim. Pl.'s Resp. 27. And Vuoncino does not dispute Defendants' argument that his SOX claim is inherently inseparable from his state-law whistleblower retaliation claims. However, Vuoncino asserts that there is no significant factual overlap between his SOX claim and his breach of contract claim and those claims are easily separable. Also, Defendants fall short of demonstrating how litigation of the SOX claim would have a "critical" impact on the arbitration.

As noted above, this test is not meant to be "required or exclusive." *See Waste Mgmt.*, 372 F.3d at 343. And notably, none of the above-referenced cases, or any Fifth Circuit case that the Court knows of, dealt with whether to grant a discretionary stay of a SOX claim. This is significant because SOX claims are statutorily exempted by Congress from "predispute arbitration agreement[s]." 18 U.S.C. § 1514A(e)(2). In other words, "Congress has explicitly rendered predispute arbitration agreements unenforceable over Sarbanes–Oxley whistleblowing retaliation claims." *Murray v. UBS Sec., LLC*, 2015 WL 769586, at *8 (S.D.N.Y. Feb. 24, 2015).

At least two courts have found SOX's express disapproval of predispute arbitration agreements grounds to allow SOX litigation to continue while a plaintiff's related state-law claims were arbitrated. In *Murray*, the Southern

District of New York refused to stay a plaintiff's SOX claim while his related claims were going to arbitration, arguing: "It would be curious to allow an arbitration award to preclude remedies under a statutory scheme for which arbitration has been deemed inappropriate by Congress; it would be equally curious to stay litigation of such a statutory claim so that arbitration might proceed unimpeded on a different claim." *Id.* Similarly, in *Wusow v. Bruker Corp.*, the Western District of Wisconsin refused to stay a plaintiff's SOX claim while his related claims were arbitrated. *Wussow v. Bruker Corp.*, 2017 WL 2805016, at *8-9 (W.D. Wis. June 28, 2017). The court did this in spite of the fact that it was "likely, if not unavoidable" that concurrent litigation and arbitration may have resulted in "conflicting factual or legal determinations." *Id.* at *8. Indeed, while noting that it would normally be efficient to stay the entire case pending arbitration, the court found that staying "the SOX claim pending arbitration . . . would effectively negate the anti-arbitration provision set forth in § 1514A(e)(2)." *Id.* Moreover, the court held that staying the SOX claim would result in "effectively denying plaintiff the right to a federal forum" guaranteed by Congress when it enacted SOX. *Id.* at *9.

However, two other courts have exercised their discretion in the opposite way based mostly on the existence of overlapping facts. In *Anderson v. Salesforce.com. Inc.*, the Northern District of California stayed a plaintiff's SOX claim because it was based on "the same conduct" as his arbitrable state-law claims, "and because allowing the arbitration to resolve [would] simplify issues of law or questions of fact in future proceedings." *Anderson v. Salesforce.com, Inc.*,

2018 WL 6728015, at *3 (N.D. Cal. Dec. 21, 2018). Similarly, in *Hansen v. Musk* the District of Nevada stayed a plaintiff's SOX claim because it arose "from the same conduct" as his arbitrable claims. *Hansen v. Musk*, 2020 WL 4004800, at *8 (D. Nev. July 15, 2020).

Taken together, the Fifth Circuit precedent regarding nonsignatory stays, the nonbinding precedent favoring concurrent litigation of a SOX claim, and the nonbinding precedent favoring the stay of a SOX claim pending arbitration all point to two competing interests in cases like the one currently before the Court. Namely, the interest of a SOX plaintiff to have immediate access to a federal forum, as guaranteed in § 1514A(e)(2), and the interest of an arbitrating party in its "right to a meaningful arbitration," as expressed by the Fifth Circuit and embodied in the FAA.

In the context presented here, the Court finds Vuoncino's interest in having a direct path to a federal forum for his SOX claim outweighs Defendants' interest in enforcing its contractual right to arbitrate Vuoncino's other claims. In crafting SOX, Congress included an explicit carve-out of predispute arbitration agreements. And in so doing, Congress evinced a clear "intention to preclude a waiver of judicial remedies for the statutory rights at issue." *Wussow*, 2017 WL 2805016, at *8 (quoting *Gilmer v. Interstate Johnson Lane Corp.*, 500 U.S. 20, 26 (1991)). If the Court were to stay Vuoncino's SOX claim while the rest of his claims are arbitrated, it would essentially disregard that intention. While the Defendants' contractual rights to arbitration may be somewhat diminished by the concurrent

litigation, Defendants are at least assured that the arbitrable claims will proceed to arbitration. Defendants also may avail themselves of the opportunity to have the Court resolve legal issues related to the SOX claim. Indeed, Defendants have represented that they believe Vuoncino's SOX claim fails as a matter of law and they intend to renew their motion to dismiss the SOX claim if the Court declines to stay it pending the arbitration of his other claims.

Accordingly, the Court should exercise its discretion to allow Vuoncino's claims to proceed concurrently, "each in its appropriate forum as determined by Congressional intent and the agreement of the parties." *Id.* at *9; *see also Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936) ("[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants."); *Qualls v. EOG Res., Inc.*, 2018 WL 2317718, at *2 (S.D. Tex. May 22, 2018) ("[A]lthough inherent power should not be abused, it is discretionary and largely unreviewable." (internal quotation marks omitted) (quoting *Coastal (Bermuda) Ltd. v. E.W. Saybolt & Co.*, 761 F.2d 198, 203n.6 (5th Cir. 1985))).

## Recommendation

The Court should GRANT in part and DENY in part the Defendants' Motions to Compel Arbitration and to Stay All Claims Pending Arbitration (ECF Nos. 142 & 156). The Court should compel arbitration of all Vuoncino's state-law claims and stay those claims pending arbitration. However, the Court should decline to stay

Vuoncino's nonarbitrable claim under the Sarbanes-Oxley Act and allow litigation of that claim to occur concurrently with the arbitration of the state-law claims.

**SO RECOMMENDED.**

February 28, 2022.

_____
REBECCA RUTHERFORD
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).